1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

10  MICHAEL VAUGHAN,                              CASE NO. 10-cv-01179-L (WMc)

11                              Plaintiff,        **REPORT AND**
                                                  **RECOMMENDATION OF**
12       vs.                                      **MAGISTRATE JUDGE**
                                                  **GRANTING IN PART AND**
13                                                **DENYING IN PART**
                                                  **DEFENDANTS' MOTION TO**
14  STATE OF CALIFORNIA, et al.,                  **DISMISS PLAINTIFF'S FIRST**
                                                  **AMENDED COMPLAINT**
15                              Defendant.
                                                  [ECF No. 26]
16

17                          **I. INTRODUCTION**

18       Plaintiff Michael Vaughan ("Plaintiff"), a former state prisoner at Calipatria State Prison

19  ("Calipatria"), filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983 alleging:

20  (1) deliberate indifference to his medical needs in violation of the Eighth Amendment; and (2)

21  medical malpractice under California law stemming from the medical care he received at

22  Calipatria.  Defendants Reymia Ramos, RN ("Nurse Ramos"), Cheryl Burnette, O.D. ("Dr.

23  Burnette"), and Alberto Lopez, RN ("Nurse Lopez") move to dismiss Plaintiff's FAC pursuant to

24  Federal Rule of Civil Procedure 12(b)(6). [ECF No.  26.]

25  ///

26  ///

27  ///

28  ///

1       The Court submits this Report and Recommendation to United States District Judge M.

2 James Lorenz pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule H.C.2 of the United States

3 District Court for the Southern District of California.  After reviewing the pleadings, parties'

4 briefs, and exhibits in support thereof, the Court recommends Defendants' Motion to Dismiss be

5 **GRANTED in part and DENIED in part.**

6 **II. PROCEDURAL HISTORY**

7       On June 1, 2010, Plaintiff filed a complaint against the State of California, Department of

8 Corrections and Rehabilitation, Calipatria, Warden Leland McEwen, and Dr. Katrina Ball ("Dr.

9 Ball") alleging deliberate indifference to his medical needs.  (ECF No. 1.)   On September 2, 2010,

10 the State of California, Department of Corrections and Rehabilitation, Calipatria, McEwen, and

11 Dr. Ball filed a Motion to Dismiss pursuant to Rule 12(b)(6).  (ECF No. 6.)

12       On November 10, 2010, this Court issued a Report and Recommendation, recommending

13 the Court issue an order: (1) denying Defendants' Motion to Dismiss Plaintiff's claims for

14 deliberate indifference against McEwen and Dr. Ball in their individual capacities; (2) granting

15 Defendants' Motion to Dismiss Plaintiff's claim against McEwen and Dr. Ball in their official

16 capacities; (3) granting Defendants' Motion to Dismiss claims against the State of California,

17 California Department of Corrections and Rehabilitation, and Calipatria; and (4) granting Plaintiff

18 leave to amend his Complaint to add a cause of action against McEwen and Dr. Ball for medical

19 malpractice. (ECF No. 14.)

20       On July 21, 2011, Judge Lorenz adopted the Report and Recommendation with

21 modifications and denied Defendants' Motion to Dismiss Plaintiff's claims for deliberate

22 indifference against Dr. Ball in her individual capacity.  (ECF No. 18.)   In addition, Judge Lorenz

23 dismissed with prejudice Plaintiff's claims against the State of California, California Department

24 of Corrections and Rehabilitation, and Calipatria. (ECF No. 18.)  Judge Lorenz also dismissed

25 with prejudice Plaintiff's claim for injunctive relief as to all parties.  (ECF No. 18.)  Finally, Judge

26 Lorenz granted Plaintiff leave to amend his complaint.  (ECF No. 18.)

27 ///

28 ///

On August 15, 2011, Plaintiff filed a FAC against Dr. Ball and added Nurse Ramos, Dr. Burnette, Nurse Lopez[1], and DOES 1 to 50. (ECF No. 19.) Additionally, Plaintiff added a medical malpractice cause of action against Dr. Ball, Nurse Ramos, Dr. Burnette, Nurse Lopez and DOES 1 to 50. (ECF No. 19.) Plaintiff sued Dr. Ball, Nurse Ramos, Dr. Burnette, and Nurse Lopez individually and in their official capacities. (ECF No. 19 at 3-4.) On August 31, 2011, Dr. Ball answered Plaintiff's FAC. (ECF No. 20.) On February 9, 2012, Nurse Ramos, Dr. Burnette, and Nurse Lopez ("Defendants") moved, pursuant to Rule 12(b)(6), for an order dismissing Plaintiff's FAC.[2] (ECF No. 26.)

**III. STATEMENT OF FACTS**

Plaintiff was a state inmate incarcerated at Calipatria commencing on or about June 26, 2008.[3] (ECF No. 19 ¶ 12.) Upon arrival at Calipatria, medical personnel gave Plaintiff a medical examination and Plaintiff provided Calipatria medical personnel with a detailed history of his injuries and medical treatment. (ECF No. 19 ¶ 13.)

On March 25, 2009, Plaintiff had surgery to correct beefy pterygium in his left eye. (ECF No. 19 at ¶ 14.) At the time, Dr. Narendra J. Patel, a physician specializing in Ophthalmology, cared for Plaintiff's left eye. Dr. Patel discharged Plaintiff in early May 2009. (ECF No. 19 at ¶ 14.) From early May 2009 to June 2009, Plaintiff reported pain and discomfort in his left eye weekly to Calipatria medical personnel. (ECF No. 19 at ¶ 15.) However, Calipatria medical personnel ignored and/or refused Plaintiff's need for specialized treatment and prescription medication. (ECF No. 19 at ¶ 15.)

///

///

///

///

---

[1] Plaintiff did not name Nurse Ramos, Dr. Burnette, and Nurse Lopez in his original complaint. (ECF No. 1.) Plaintiff subsequently added Nurse Ramos, Dr. Burnette, and Nurse Lopez in his FAC. (ECF No. 19.)

[2] Dr. Ball filed an answer to the FAC and is not a moving Defendant.

[3] Plaintiff was released from custody in July 2011. (ECF No. 19 ¶ 14.)

1    On June 2, 2009, Dr. Burnette, a licensed optometrist, noted in Plaintiff's medical records

2  that Plaintiff was exhibiting physical signs and symptoms of a corneal ulcer in his left eye.  (ECF

3  No. 19 at ¶ 16.)  Dr. Burnette did not refer Plaintiff to an ophthalmologist for treatment.[4]  (ECF

4  No. 19 at ¶ 16.)  Between June 2, 2009 and June 16, 2009, Calipatria medical personnel did not

5  provide Plaintiff treatment or care for his left eye.  (ECF No.19 at ¶ 17.)

6    On June 16, 2009, Plaintiff presented to the prison medical clinic complaining of

7  worsening symptoms and requested medical treatment and pain medication.  (ECF No. 19 at ¶ 18.)

8  Plaintiff's left eye was swollen shut with yellow discharge.  (ECF No. 19 at ¶ 18.)  An unknown

9  staff member, DOE 1, took Plaintiff's written request and directed Plaintiff to return to his cell.

10  (ECF No. 19 at ¶ 18.)   Between June 16, 2009 and June 18, 2009, Calipatria medical personnel

11  failed to treat Plaintiff's left eye.  (ECF No.19 at ¶ 19.)

12    On June 18, 2009, Dr. Burnette noted in Plaintiff's medical records that Plaintiff was

13  exhibiting physical signs and symptoms of a corneal ulcer in his left eye.  (ECF No. 19 at ¶ 20.)

14  Again, Dr. Burnette did not refer Plaintiff to an ophthalmologist for treatment.  (ECF No. 19 at ¶

15  20.)  Dr. Burnette directed Plaintiff to return to his cell without any medication or explanation.

16  (ECF No. 19 at ¶ 20.)  Between June 19, 2009 and June 20, 2009, Calipatria medical personnel did

17  nothing to treat Plaintiff.  (ECF No. 19 at ¶ 21.)

18    On June 20, 2009, Dr. Le, an ophthalmologist, noted Plaintiff was exhibiting physical signs

19  and symptoms of corneal ulcer in his left eye.  (ECF No. 19 at ¶ 22.)  Dr. Le wrote Plaintiff a

20  prescription for antibiotic eye drops.  (ECF No. 19 at ¶ 22.)  However, between June 20, 2009 and

21  June 22, 2009, Calipatria medical personnel failed to provide Plaintiff with medication for his left

22  eye.  (ECF No. 19 at ¶ 23.)

23    On June 22, 2009, Plaintiff presented to Calipatria medical clinic and complained he had

24  not received his eye drops.  (ECF No. 19 at ¶ 24.)  Nurse Ramos noted Dr. Le prescribed Plaintiff

25  antibiotic eye drops for his left eye.  (ECF No. 19 at ¶ 24.)  Nurse Ramos did not explain why

26  Calipatria medical personnel had not filled Plaintiff's prescription, but noted Plaintiff's medical

27  chart was missing.  (ECF No. 19 at ¶ 24.)  Nurse Ramos directed Plaintiff to return to his cell

28

---

[4] Dr. Burnette cannot  prescribe medication.  (ECF No. 19 ¶ 16.)

without his eye drops.  (ECF No. 19 at ¶ 24.)  Between June 22, 2009 and June 25, 2009, Plaintiff still received no medication for his left eye. (ECF No. 19 at ¶ 25.)

On June 25, 2009, Plaintiff presented to Calipatria medical clinic and again complained he had not received his antibiotic eye drops.  (ECF No. 19 at ¶ 26.)  Nurse Lopez noted in Plaintiff's medical records that he was exhibiting physical signs and symptoms of a corneal ulcer in his left eye.  (ECF No. 19 at ¶ 26.)  Yet, Nurse Lopez did not refer Plaintiff to an ophthalmologist.  (ECF No. 19 at ¶ 26.)  Nurse Lopez directed Plaintiff to return to his cell without his antibiotic eye drops or an examination by an ophthalmologist.  (ECF No. 19 at ¶ 26.)

On July 3, 2009, an outside ophthalmologist examined Plaintiff's left eye.  The ophthalmologist diagnosed Plaintiff with an advanced corneal ulcer and a severe eye infection caused by bacteria in the anterior chamber of his left eye.  (ECF No. 19 at ¶ 27.)  The ophthalmologist prescribed antibiotics and administered the antibiotics into Plaintiff's left eye. (ECF No. 19 at ¶ 27.)  Plaintiff required ongoing treatment and care for his infected left eye, which included administering antibiotic eye drops.  (ECF No. 19 at ¶ 27.)

In August 2009, Calipatria ran out of Plaintiff's prescribed eye drops.  (ECF No. 19 at ¶ 28.)  Consequently, Dr. Ball instructed Nurse Lopez to administer medication which Plaintiff's ophthalmologist had discontinued.  (ECF No. 19 at ¶ 28.)  Dr. Ball changed Plaintiff's eye medication without consulting Plaintiff's ophthalmologist.  (ECF No. 19 at ¶ 28.)  Subsequently, Plaintiff had surgery to excise a corneal ulcer in his left eye.  (ECF No. 19 at ¶ 29.)

**IV. STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999).  A Rule 12(b)(6) dismissal may be based on either a " 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.' "  *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In other words, the complaint must provide a "short and plain statement of the claim showing that [plaintiff] is entitled to relief."  *Id.*  The court does not look at whether the plaintiff will "ultimately

1   prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v.*

2   *Rhodes*, 416 U.S. 232, 236 (1974).

3          The court will grant a motion to dismiss if plaintiff fails to proffer "enough facts to state a

4   claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

5   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

6   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

7   *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). The court must accept as true all material

8   allegations in the complaint, as well as reasonable inferences to be drawn from them, and must

9   construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v.*

10  *Civish*, 382 F.3d 969, 973 (9th Cir. 2004) (citing *Karam v. City of Burbank*, 352 F.3d 1188, 1192

11  (9th Cir. 2003)). The court need not accept conclusory allegations in the complaint as true.

12  Rather, the court must "examine whether [the conclusory allegations] follow from the description

13  of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).

14                                      **V. DISCUSSION**

15  **A.      Eighth Amendment Deliberate Indifference**

16          **1.      Defendants' Motion to Dismiss**

17          Nurse Lopez and Nurse Ramos contend they were not deliberately indifferent to Plaintiff's

18  serious medical needs because a difference of medical opinion between the inmate and prison

19  medical authorities regarding a diagnosis and/or treatment is insufficient to prove deliberate

20  indifference. (ECF No. 26-1 at 13-14; ECF No. 30 at 2-5.) Moreover, Nurse Lopez and Nurse

21  Ramos contend Plaintiff cannot prove they were aware of facts from which an inference of

22  substantial risk of serious harm could be drawn and that they actually drew the inference, but

23  failed to act. (ECF No. 26-1 at 13-14; ECF No. 30 at 2-5.) Finally, Nurse Lopez and Nurse

24  Ramos contend they both only saw Plaintiff one time in June 2009. According to Nurse Lopez

25  and Nurse Ramos, this isolated and brief contact with Plaintiff is insufficient to violate the Eighth

26  Amendment. (ECF No. 26-1 at 13-14; ECF No. 30 at 2-5.)

27          Dr. Burnette contends she was not deliberately indifferent to Plaintiff's serious medical

28  needs because the Constitution does not require prisoners be given every medical treatment they

1   desire.  (ECF No. 26-1 at 14-15; ECF No. 30 at 5.)  Dr. Burnette further argues the Constitution

2   does not grant an inmate an independent right to outside medical care additional and supplemental

3   to the care provided by prison medical staff.  (ECF No. 26-1 at 14-15; ECF No. 30 at 5.)  Finally,

4   Dr. Burnette contends a difference of medical opinion between the inmate and prison medical

5   authorities regarding a diagnosis and/or treatment is insufficient to prove deliberate indifference.

6   (ECF No. 26-1 at 14-15; ECF No. 30 at 5.)

7          **2.      Plaintiff's Opposition**

8          Plaintiff contends he has alleged sufficient facts to support a claim that Defendants acted

9   with deliberate indifference to his serious medical needs.  Specifically, Plaintiff argues he alleged

10  Defendants noted in his medical records that he was exhibiting symptoms of an infection in his left

11  eye and that is the same as alleging Defendants literally "saw" Plaintiff was exhibiting symptoms

12  of an eye infection.  Plaintiff contends these allegations establish Defendants recognized the

13  symptoms, saw an inmate in pain, and did nothing to treat a medical condition.  (ECF No. 27 at

14  8-10.)

15         In addition, Plaintiff argues there is no difference of medical opinion at issue because

16  Defendants did not render a medical opinion.  Instead, Defendants sent Plaintiff back to his cell

17  without explanation, opinion, or cause.  Further, Plaintiff argues he has alleged Defendants' delay

18  or lack of treatment contributed and/or caused the need for Plaintiff's second surgery.  (ECF No.

19  27 at 8-10.)

20         Finally, Plaintiff argues Defendants' actions were not isolated occurrences or exceptions.

21  Plaintiff states that when each of the Defendants saw Plaintiff, they knew from Plaintiff's medical

22  records that the Defendant before them had seen Plaintiff and not treated Plaintiff's medical

23  condition.  None of Defendants attempted to follow up with Plaintiff to see if he received medical

24  care.  Therefore, Plaintiff argues Defendants' acts of deliberate indifference continued over a

25  period of thirty (30) days making not one isolated occurrence, but thirty (30) occurrences.  (ECF

26  No. 27 at 8-10.)

27  ///

28  ///

1

**3.      Relevant Legal Standard**

2      A prison official's deliberate indifference to a prisoner's serious medical needs constitutes

3 the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v.*

4 *Gamble*, 429 U.S. 97, 104; *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  To prevail a

5 plaintiff must show: (1) a serious medical need and (2) defendant's response to plaintiff's serious

6 medical need was deliberately indifferent.  *Jett*, 439 F.3d at 1096; *McGuckin v. Smith*, 974 F.2d

7 1050, 1059 (9th Cir. 1992), *overruled on other grounds in WMX Techs., Inc. v. Miller*, 104 F.3d

8 1133, 1136 (9th Cir. 1997) (en banc)).

9      First, "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could

10 result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin*,

11 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104).  The following are examples of serious

12 medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important

13 and worthy of comment or treatment; the presence of a medical condition that significantly affects

14 an individual's daily activities; or the existence of chronic and substantial pain."  *Id.* at 1059-60;

15 *see, e.g., Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990); *Hunt v. Dental Dept.*, 865

16 F.2d 198, 200-01 (9th Cir. 1989).

17      Second, a defendant must purposefully ignore or fail to respond to a prisoner's pain or

18 medical need.  *McGuckin*, 974 F.2d at 1060.  Plaintiff must allege "prison officials acted with a

19 culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 302 (1991).  A culpable state of mind

20 entails more than mere negligence, but less than conduct undertaken for the very purpose of

21 causing harm.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official does not act in a

22 deliberately indifferent manner unless the official "knows of and disregards an excessive risk to

23 inmate health or safety."  *Id.* at 834.  A prison official must "be aware of the facts from which the

24 inference could be drawn that a substantial risk of serious harm exists," and "must also draw the

25 inference."  *Toguchi v. Chung*, 391 F.3d 1051, 1057-58 (9th Cir.  2004) (quoting *Farmer*, 511 U.S.

26 at 837).

27      A prison official abridges a prisoner's civil rights only if the prison official's indifference

28 to the prisoner's medical needs was substantial.  *Broughton v. Cutter Laboratories*, 622 F.2d 458,

460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06).  Inadequate treatment due to mere indifference, medical malpractice, or even gross negligence, does not violate the Eighth Amendment.  *Id.*; *Estelle*, 429 U.S. at 106; *Toguchi*, 391 F.3d at 1060; *Wood*, 900 F.2d at 1334; *see Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995).

  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment."  *McGuckin*, 974 F.2d at 1059.  However, mere delay or denial of treatment does not violate the Eighth Amendment, unless the delay or denial was harmful.  *Id.* at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  If a prisoner is seriously harmed by a prison official's inaction, that harm tends to support a claim of deliberate indifference to a serious medical need.  *McGuckin*, 974 F.2d at 1060.

Prison inmates have no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff.  *See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986).  Further, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim.  *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  However, a plaintiff can show the course of treatment the doctors chose was "medically unacceptable under the circumstances" and prison officials "chose this course in conscious disregard of an excessive risk to plaintiff's health."  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986).

Finally, deliberate indifference may include "a failure to respond to a known medical problem . . . and a failure to provide  medical staff competent to examine and diagnose inmate's problems.*"  Eres v. County of Alameda*, 1999 WL 66519, at 8 (N.D.Cal. Feb.1, 1999).  Deliberate indifference may also  include medical care "so cursory as to amount to no treatment at all."  See *Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970); *see, e.g. Parzyck v. Prison Health Servs., Inc.*, 290 Fed.Appx. 289, 291 (11th Cir. 2008) (failure of prison medical staff to provide an orthopedic consultation on two occasions even though consultations were recommended and prisoner was in pain).

///

### 4. Application to Plaintiff's Allegations

#### a. Allegations against Nurse Lopez

On June 25, 2009, Plaintiff presented to Calipatria medical clinic and again complained he had not received his eye drops. (ECF No. 19 at ¶ 26.) Nurse Lopez noted in Plaintiff's medical records that he was exhibiting physical signs and symptoms of a corneal ulcer in his left eye. (ECF No. 19 at ¶ 26.) Yet, Nurse Lopez did not refer Plaintiff to an ophthalmologist. (ECF No. 19 at ¶ 26.) Nurse Lopez directed Plaintiff to return to his cell without his antibiotic eye drops or an examination by an ophthalmologist. (ECF No. 19 at ¶ 26.)

Plaintiff adequately pleads sufficient facts for the first element of deliberate indifference, his serious medical need. *McGuckin*, 974 F.2d at 1059. Plaintiff states he suffered an advanced corneal ulcer and a severe eye infection caused by bacteria in the anterior chamber of his left eye. (ECF No. 19 at ¶ 27.) Plaintiff contends that as a result of Defendant's actions he required a subsequent surgery to excise the corneal ulcer. (ECF No. 19 at ¶ 29.) The failure to treat Plaintiff's injury may have resulted in further significant injury (i.e. surgery to excise a corneal ulcer) and unnecessary and wanton infliction of pain. *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Therefore, Plaintiff adequately pleads sufficient facts to demonstrate his serious medical need.

Plaintiff also adequately pleads sufficient facts for the second element, that Nurse Lopez acted with a culpable state of mind in denying, delaying, or interfering with Plaintiff's medical care. *Wilson*, 501 U.S. at 302; *Hunt*, 865 F.2d at 201. Nurse Lopez attempts to characterize Plaintiff's allegations as a difference in medical opinion between a prisoner and prison medical personnel. *Sanchez*, 891 F.2d 240, 242. However, Nurse Lopez's reliance on this characterization is misplaced because Plaintiff alleges Nurse Lopez delayed giving Plaintiff eye drops which were already prescribed to him, not that Nurse Lopez erroneously diagnosed his condition. (ECF No. 19 at ¶ 26.)

Plaintiff sufficiently alleges Nurse Lopez knew of his serious medical needs by stating Nurse Lopez noted in Plaintiff's medical chart that he was exhibiting symptoms of a corneal ulcer. (ECF No. 19 at ¶ 26.) A reasonable inference based on Plaintiff's allegations is that Nurse

Lopez's medical training would have alerted him to Plaintiff's serious medical needs when he noted Plaintiff was exhibiting symptoms of a corneal ulcer.  Plaintiff contends, despite this knowledge, Nurse Lopez purposely ignored or failed to respond to Plaintiff's pain and serious medical need when he directed Plaintiff to return to his cell without examination by an ophthalmologist or his prescribed eye drops.  (ECF No. 19 at ¶ 26.)  From the alleged facts the Court can reasonably infer Nurse Lopez made a decision not to treat Plaintiff's serious medical needs despite his knowledge of Plaintiff's serious medical need.

While Plaintiff only alleges Nurse Lopez saw him once, the one time Nurse Lopez saw Plaintiff he failed to respond to Plaintiff's known medical condition.  *Eres*, 1999 WL 66519 at 8.  Plaintiff alleges, Nurse Lopez's inaction, resulted in a delay in Plaintiff receiving his antibiotic eye drops and an examination by an ophthalmologist.  (ECF No. 19 at ¶ 26.)  Plaintiff alleges this delay in medical treatment ultimately resulted in a severe infection in his left eye which required surgery to excise a corneal ulcer in his left eye.  (ECF No. 19 at ¶ 29.)  Thus, the Court can reasonably infer Nurse Lopez's inaction resulted in serious harm to Plaintiff, which tends to support a claim of deliberate indifference.  *McGuckin*, 874 F.2d at 1060.

Therefore, Plaintiff pleads sufficient facts to show Nurse Lopez's delay in treatment was harmful, thereby constituting deliberate indifference to his medical needs.  *McGuckin*, 974 F.2d at 1060.  Accordingly, the Court recommends Nurse Lopez's Motion to Dismiss Plaintiff's Eighth Amendment claim be DENIED.

### b.   Allegations against Nurse Ramos

On June 22, 2009, Plaintiff presented to Calipatria medical clinic and complained he had not received his prescribed eye drops.  (ECF No. 19 at ¶ 24.)  Nurse Ramos noted Dr. Le prescribed Plaintiff eye drops for his left eye.  (ECF No. 19 at ¶ 24.)  Nurse Ramos did not explain why Calipatria medical personnel had not filled Plaintiff's prescription, but noted Plaintiff's medical chart was missing.  (ECF No. 19 at ¶ 24.)  Nurse Ramos directed Plaintiff to return to his cell without his prescribed eye drops.  (ECF No. 19 at ¶ 24.)

As discussed above in Section 4a, Plaintiff adequately pleads sufficient facts for the first element of deliberate indifference, his serious medical need.  *McGuckin*, 974 F.2d at 1059.

1    Additionally, Plaintiff adequately pleads sufficient facts for the second element, that Nurse Ramos

2    acted with a culpable state of mind in denying, delaying, or interfering with Plaintiff's medical

3    care. *Wilson*, 501 U.S. at 302; *Hunt*, 865 F.2d at 201.  Nurse Ramos, like Nurse Lopez, also

4    attempts to characterize Plaintiff's allegations as a difference in medical opinion between a

5    prisoner and prison medical personnel.  *Sanchez*, 891 F.2d 240, 242.  However, Nurse Ramos's

6    reliance on this characterization is also misplaced because Plaintiff alleges Nurse Ramos delayed

7    giving Plaintiff his prescribed eye drops, not that Nurse Ramos erroneously diagnosed his

8    condition.  (ECF No. 19 at ¶ 24.)

9        Plaintiff alleges Nurse Ramos knew of his serious medical condition when she noted Dr.

10   Le prescribed antibiotic eye drops for Plaintiff.  (ECF No. 19 at ¶ 24.)  From the alleged facts the

11   Court can reasonably infer that Nurse Ramos's medical training would have alerted her to

12   Plaintiff's serious medical needs.  Plaintiff contends, despite this knowledge, Nurse Ramos

13   purposefully ignored or failed to treat Plaintiff's condition and directed him to return to his cell

14   without his eye drops.  (ECF No. 19 at ¶ 24.)

15       While Plaintiff alleges Nurse Ramos, like Nurse Lopez, only saw him once, the one time

16   Nurse Ramos saw Plaintiff she failed to respond to Plaintiff's known medical condition.  *Eres*,

17   1999 WL 66519 at 8.  Plaintiff contends Nurse Ramos's inaction caused a harmful delay in

18   Plaintiff receiving his antibiotic eye drops.  (ECF No. 19 at ¶ 24.)  Plaintiff alleges this delay in

19   medical treatment ultimately resulted in a severe infection in his left eye which required surgery to

20   excise a corneal ulcer in his left eye.  (ECF No. 19 at ¶ 29.)  Thus, the Court can reasonably infer

21   Nurse Ramos's inaction resulted in serious harm to Plaintiff, which tends to support a claim of

22   deliberate indifference.  *McGuckin*, 974 F.2d at 1060.

23       Therefore, Plaintiff pleads sufficient facts to show Nurse Ramos's delay in treatment was

24   harmful, thereby constituting deliberate indifference to his serious medical needs.  *McGuckin*, 974

25   F.2d at 1060.  Accordingly, the Court recommends Nurse Ramos's Motion to Dismiss Plaintiff's

26   Eighth Amendment claim be DENIED.

27   ///

28   ///

*c.*       *Allegations against Dr. Burnette*

On June 2, 2009, Dr. Burnette noted in Plaintiff's medical records that Plaintiff was exhibiting physical signs and symptoms of a corneal ulcer in his left eye.  Dr. Burnette did not refer Plaintiff to an ophthalmologist for treatment or medication.  (ECF No. 19 at ¶ 16.)  Later, on June 18, 2009, Dr. Burnette again noted in Plaintiff's medical records that Plaintiff was exhibiting physical signs and symptoms of a corneal ulcer in his left eye.  (ECF No. 19 at ¶ 20.) Yet, Dr. Burnette did not refer Plaintiff to an ophthalmologist for treatment or medication.  (ECF No. 19 at ¶ 20.)  Instead, Dr. Burnette directed Plaintiff to return to his cell without any medication or explanation.  (ECF No. 19 at ¶ 20.)

As discussed above in Section 4a, Plaintiff adequately pleads sufficient facts for the first element of deliberate indifference, his serious medical need. *McGuckin*, 974 F.2d at 1059. Additionally, Plaintiff adequately pleads sufficient facts for the second element, that Dr. Burnette acted with a culpable state of mind in denying, delaying, or interfering with Plaintiff's medical care. *Wilson*, 501 U.S. at 302; *Hunt*, 865 F.2d at 201.  Specifically, Plaintiff alleges Dr. Burnette, a licensed optometrist, knew of his serious medical needs when Dr. Burnette noted twice in Plaintiff's medical records that he was exhibiting physical signs and symptoms of a corneal ulcer. (ECF No. 19 at ¶¶ 16, 20.)

Plaintiff contends, despite this knowledge, Dr. Burnette purposefully ignored or failed to respond to Plaintiff's pain and serious medical needs.  Plaintiff alleges that two days after presenting to Calipatria medical clinic with his left eye swollen shut with yellow discharge, Dr. Burnette again noted Plaintiff was exhibiting symptoms of a corneal ulcer.  (ECF No. 19 at ¶¶ 18, 20.)  Instead of providing Plaintiff with treatment, Dr. Burnette directed Plaintiff to return to his cell without treatment.  (ECF No. 19 at ¶ 20.)  The court may reasonably infer (a) Dr. Burnette's medical training would have alerted him to Plaintiff's need for care, and (b) Dr. Burnette failed to respond to Plaintiff's known medical condition. *Eres*, 1999 WL 66519 at 8.

Plaintiff alleges Dr. Burnette's failure to respond to Plaintiff's medical needs resulted in a delay in Plaintiff receiving treatment for his left eye.  Plaintiff alleges this delay in medical treatment ultimately resulted in a severe infection in his left eye which required surgery to excise a

corneal ulcer in his left eye.  (ECF No. 19 at ¶ 29.)  The Court can reasonably infer from Plaintiff's allegations that Dr. Burnette's repeated failure to treat Plaintiff or refer Plaintiff to an ophthalmologist for treatment can be construed as medical care so cursory as to afford Plaintiff no treatment at all.  *Tolbert*, 434 F.2d at 626.  When allegations indicate this type of indifference, dismissal prior to discovery is premature.  *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) (plaintiff alleged defendants failed to provide proper medical care and court determined the medical care provided was so cursory as to amount to no treatment at all).

Plaintiff pleads sufficient facts to show Dr. Burnette's delay in treatment was harmful, thereby constituting deliberate indifference to his medical needs.  *McGuckin*, 974 F.2d at 1060. Accordingly, the Court recommends Dr. Burnette's Motion to Dismiss Plaintiff's Eighth Amendment claim be DENIED.

**B.	Source of Constitutional Protection Governing Defendants' Alleged Conduct**

**1.	Defendants' Motion to Dismiss**

Defendants contend the Eighth Amendment provides the explicit textual source of constitutional protection for Plaintiff because at all relevant times Plaintiff was an inmate at Calipatria.  (ECF No. 26-1 at 15; ECF No. 30 at 6.)   Therefore, Defendants argue the Court should dismiss Plaintiff's Fifth, Ninth, and Fourteenth Amendment claims as superfluous.  (ECF No. 26-1 at 15; ECF No. 30 at 6.)

**2.	Relevant Legal Standard**

Where a particular amendment "provides an explicit textual source of constitutional protection against [certain] government conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [a plaintiff's] claims."  *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Armendariz v. Penman*, 75 F.3d 1311, 13 (9th Cir. 1996) (en banc), *overruled in part on other grounds in Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007) (holding other constitutional claims preempted plaintiff's substantive due process claim).  Therefore, the court may limit its inquiry to the Constitutional Amendment that specifically addresses plaintiff's claim.  *Graham*, 490 U.S. at 395 n. 10.

///

3.       **Application to Plaintiff's Allegations**

         a.       *Fifth Amendment*

Plaintiff claims Defendants violated his rights secured under the Fifth Amendment. However, violations of due process under the Fifth Amendment can only be made against the federal government and not state actors. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008); *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001). Here, Plaintiff's allegations relate only to state actors. Accordingly, the Court recommends Defendants' Motion to Dismiss Plaintiff's Fifth Amendment claim be GRANTED without leave to amend.

         b.       *Ninth Amendment*

Plaintiff claims Defendants also violated his rights secured under the Ninth Amendment. The Ninth Amendment provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX. The Ninth Amendment does not provide a basis upon which Plaintiff may impose liability under 42 U.S.C. § 1983 because it does not "independently [secure] any constitutional right." *Standberg v. City of Helena*, 791 F.2d 774, 748 (9th Cir. 1986) (citations omitted); *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029 (9th Cir. 2002) (Ninth Amendment claim properly dismissed because plaintiffs may not " 'double up' constitutional claims"), *aff'd sub nom*. *Groh v. Ramirez*, 540 U.S. 551 (2004); *Schowengerdt v. United States*, 944 F.2d 483, 490 (9th Cir. 1991) (Ninth Amendment "not interpreted as independently securing any constitutional rights for purposes of making out a constitutional violation"). Accordingly, the Court recommends Defendants' Motion to Dismiss Plaintiff's Ninth Amendment claim be GRANTED without leave to amend.

         c.       *Fourteenth Amendment*

Plaintiff further claims Defendants violated his rights secured under the Fourteenth Amendment. However, the Eighth Amendment specifically governs prisoner claims for inadequate medical care. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983). Plaintiff's Fourteenth Amendment claims are more appropriately analyzed under the Eighth Amendment and are subsumed by his Eighth Amendment claims. *Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("the Eighth Amendment, which is specifically concerned with the unnecessary and

1   wanton infliction of pain in penal institutions, serves as the primary source of substantive

2   protection to convicted prisoners").  Accordingly, the Court recommends Defendants' Motion to

3   Dismiss Plaintiff's Fourteenth Amendment claim be GRANTED without leave to amend.

4   **C.      California Medical Malpractice Cause of Action**

5           **1.      Defendants' Motion to Dismiss**

6           Defendants contend Plaintiff's California medical malpractice cause of action is time-

7   barred because Plaintiff did not commence the action against them within six months of the

8   rejection of Plaintiff's tort claims.  (ECF No. 26-1 at 20; ECF No. 30 at 8.)  Defendants argue

9   Plaintiff is not entitled to relation back under Rule 15(c)(1)(C) for a number of reasons.  (ECF No.

10  26-1 at 20; ECF No. 30 at 8.)  First, Defendants argue the amendment does not assert a claim or

11  defense that arose out of the conduct, transaction, or occurrence set out in the original pleading.

12  (ECF No. 26-1 at 20; ECF No. 30 at 8.)  Second, Defendants argue they did not receive notice of

13  the pending action within the time prescribed by Rule 4(m), namely, 120 days from the filing of

14  the original complaint in January 2010.  (ECF No. 26-1 at 20; ECF No. 30 at 8.)  Third,

15  Defendants argue Plaintiff cannot prove Defendants knew or should have known during the Rule

16  4(m) period that, but for some mistake, the action would have been brought against them.  (ECF

17  No. 26-1 at 20; ECF No. 30 at 8.)

18          **2.      Plaintiff's Opposition**

19          Plaintiff contends his FAC relates back to his original complaint because his California

20  medical malpractice cause of action is based on the same incident and course of conduct alleged in

21  the original complaint.  (ECF No. 27 at 11.)  Plaintiff argues he named Calipatria in his original

22  complaint and Nurse Lopez, Nurse Ramos, and Dr. Burnette are the employees at Calipatria who

23  had actual contact with Plaintiff in the medical ward.  (ECF No. 27 at 12.)  Plaintiff notes he was

24  unable to specifically identify Defendants until he received his medical records on February 1,

25  2011.  (ECF No. 27 at 12.)  Finally, Plaintiff argues his FAC is a refinement based on those issues

26  raised in the Rule 12(b)(6) motion filed September 2, 2010.  (ECF No. 27 at 12.)

27  ///

28  ///

### 3.      Relevant Legal Standard

To sue a California public employee, a claimant must first file an administrative tort claim with the State.  Cal. Gov. Code § 945.6.  If California denies the claim, the claimant has six (6) months from the date of the denial to file a civil action.  Cal. Gov. Code § 945.6.  "Prisoners are not entitled to tolling of this limitations period."  *Brown v.  Grove*, 647 F.Supp.2d 1178, 1187 (C.D. Cal. 2009); *see also Moore v. Twomey*, 120 Cal.App.4th 910, 914 (2004).

An amended pleading, filed outside the applicable statute of limitations, may be considered timely filed if it relates back to the date of a timely filed original pleading.  Fed. R. Civ. P. 15(c).  When a plaintiff adds new defendants in an amended complaint, the following requirements must be satisfied for an amendment to relate back to the original complaint.  Fed. R. Civ. P. 15(c)(1)(C).

First, the claim against the new defendants must have arisen "out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original" complaint.  Fed. R. Civ. P. 15(c)(1)(B).  Second, the new defendants must have received notice of the action "within the period provided by Rule 4(m) for serving the summons and complaint."  Fed. R. Civ. P. 15(c)(1)(C)(I).  Newly added defendants must receive actual "notice of institution of action," it is not sufficient to demonstrate newly added defendants know of the events giving rise to the claim for relief.  *Craig v. United States*, 413 F.2d 854, 858 (9th Cir. 1969) (applying former Rule 15(c)).  Newly added defendants must know Plaintiff filed the lawsuit.  (*Id.*)  Finally, the new defendants must have known "or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  The Supreme Court explained, Rule 15(c)(1)(C)(ii) "asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of the filing [his] original complaint."  *Krupski v. Costa Crociere S.p.A.*, __ U.S. __, 130 S.Ct. 2485, 2494 (2010).

///

///

///

///

### 4.    Analysis of California Medical Malpractice Cause of Action

Plaintiff filed two tort claims with the California Victim Compensation and Government Board.[5]  (ECF No. 26-2.)  Plaintiff filed his first claim on September 17, 2009.  (ECF No. 26-2 at 2-4.)  The California Victim Compensation and Government Claims Board rejected Plaintiff's first claim on December 24, 2009.  (ECF No. 26-2 at 5.)  Plaintiff filed his second claim on December 2, 2009.  (ECF No. 26-2 at 10-11.)  The California Victim Compensation and Government Claims Board rejected Plaintiff's second claim on January 28, 2010.  (ECF No. 26-2 at 12.)

Where, as here, the claim is denied, the claimant has six months from the date of the denial to file a civil action.  *See* Cal. Gov. Code § 945.6.  After the California Victim and Compensation and Government Claims Board denied Plaintiff's second claim he had until June 28, 2010 to file a civil action.  On June 1, 2010, Plaintiff filed his original complaint against the State of California, the Department of Corrections and Rehabilitation, Calipatria State Prison, Leland McEwen, and Dr. Ball.  (ECF No. 1.)  On August 15, 2011, Plaintiff filed his FAC against the newly added Defendants.  (ECF No. 19.)  Thus, Plaintiff did not commence the action against newly added Defendants within six months of the denial of his claim unless relation back applies.

Accordingly, the next issue is whether under these circumstances Plaintiff's FAC relates back to his original complaint under Rule 15(c)(1)(C).  First, the medical malpractice claim against newly added defendants must have arisen out of the conduct set forth in the original complaint.  Fed. R. Civ. P. 15(c)(1)(C).  Plaintiff's original complaint arises from his medical care at Calipatria State Prison from May 2009 through July 2009.  (ECF No. 1 at ¶ 19.)  Plaintiff's FAC also arises from his medical care at Calipatria State Prison from May 2009 through July 2009.  (ECF No. 19.)  Therefore, Plaintiff's medical malpractice claims against newly added Defendants arose out of the same conduct set forth in Plaintiff's original complaint.

Second, Plaintiff had to provide sufficient notice to newly added Defendants of the original action within the period provided by Rule 4(m) for serving the summons and complaint.  Fed. R.

---

[5] The Court recommends granting Defendants' request to take judicial notice of Plaintiff's tort claims and related documents under Federal Rule of Civil Procedure 21(d).  *See United States v. State of California*, 655 F.2d 914, 918 (9th Cir. 1980) (it is proper for a federal court to determine whether a plaintiff bringing tort claims against a public entity has complied with California Tort Claims Act).

Civ. P. 15(c)(1)(C)(I).  It is not sufficient to show the newly added defendants knew of the events

giving rise to the claim for relief.  *Craig*, 413 F.2d at 858.  Here, Plaintiff served Nurse Lopez with

a copy of the FAC and summons on December 28, 2011.[6]  Nurse Lopez received notice of the

action well outside the 120 day period provided by Rule 4(m) and there is nothing to suggest

Nurse Lopez knew Plaintiff filed the lawsuit.  Plaintiff's opposition suggests newly added

Defendants will not be prejudiced because they are represented by the same attorney representing

Calipatria employees since the beginning of this action.  (ECF No. 27 at 12.)  However, Rule

15(c)(1)(C) focuses on what the newly added defendants knew and not what the newly added

defendants' attorney knew during the Rule 4(m) period.  Therefore, Plaintiff did not provide newly

added Defendants with sufficient notice of the original action within the period provided by Rule

4(m).

Third, Plaintiff must demonstrate that within the Rule 4(m) period, defendants "knew or

should have known that the action would have been brought against [them], but for a mistake

concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C)(ii).  Plaintiff's opposition

addresses what he knew about the identify of Defendants at the time he filed his original

complaint.  (ECF No. 27 at 12.)  However, Rule 15(c)(1)(C)(ii) "asks what the prospective

defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or

should have known at the time of the filing of [his] original complaint."  *Krupski*, 130 S.Ct. at

2494.  Plaintiff argues he was unable to specifically identify the newly added Defendants until he

received his medical records from Calipatria in February 2011.  (ECF No. 27 at 12.)  According to

Plaintiff, Defendants knew or should have known Plaintiff would have brought the action against

them because Defendants were the employees who had contact with Plaintiff in the medical ward.

This argument is unsuccessful because Plaintiff has not established Defendants knew about the

institution of the action.  Therefore, it is unlikely Defendants knew or should have known, but for

Plaintiff's mistake, the action would have been brought against them.  Plaintiff has not

demonstrated that within the Rule 4(m) period, Defendants knew or should have known the action

---

[6] Plaintiff does not address when he served Nurse Ramos and Dr. Burnette with a copy of the FAC and summons. Further, the record does not reflect when Plaintiff served Nurse Ramos and Dr. Burnette with a copy of the FAC and summons.

1  would have been brought against them.

2         Accordingly, the Court recommends Defendants' Motion to Dismiss Plaintiff's medical

3  malpractice claim be GRANTED without leave to amend.

4  **D.      Supplemental Jurisdiction**

5         The Court recommends Defendants' request that the Court decline to exercise

6  supplemental jurisdiction over Plaintiff's pendant state claim be DENIED as moot because the

7  Court has recommended Defendants' Motion to Dismiss Plaintiff's medical malpractice claim be

8  GRANTED without leave to amend.  *See* 28 U.S.C. § 1367(c)(1)-(4); *City of Chicago v.*

9  *International College of Surgeons*, 522 U.S. 156, 172 (1997) ("[o]ur decisions have established

10 that pendent [supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right ... ").

11                    **V. CONCLUSION AND RECOMMENDATION**

12        For the reasons outlined above, **IT IS HEREBY RECOMMENDED** the Court issue an

13 Order: (1) approving and adopting this Report and Recommendation; (2) denying Defendants'

14 Motion to Dismiss Plaintiff's claims for deliberate indifference; (3) granting Defendants' Motion

15 to Dismiss Plaintiff's Fifth, Ninth, and Fourteenth Amendment claims; (4) granting Defendants'

16 Motion to Dismiss Plaintiff's malpractice claim; and (5) denying as moot Defendants' request that

17 the Court decline to exercise supplemental jurisdiction over Plaintiff's pendant state claim.

18        **IT IS ORDERED** that **no later than April 2, 2012**, any party to this action may file

19 written objections with the Court and serve a copy on all parties.  The document should be

20 captioned "Objections to Report and Recommendation."

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 16, 2012.** The parties are advised failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.1998); *see also Martinez v. Ylst*, 951F.2d 1153, 1156 (9th Cir.1991).

**IT IS SO ORDERED**.

Date: March 16, 2012

_____
Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court

10-cv-01179-L (WMc)